Jones, J.
In Wright v. Ritterman, (1 Abb. Pr. N. S. 428,) it is held that a valid discharge granted under the provisions of article 5, chapter 5, title 1, part 2, of the Bevised Statutes, (under which provisions the discharge in this case was granted,) operated so as that if a person in whose favor such discharge has been granted should thereafter be sued in an action ex contractu for a debt due or contracted at the time of the application for a discharge, and should be arrested on the ground that the debt was fraudulently contracted, such person would be entitled to be discharged from arrest.
In the present case the summons being issued under the first subdivision of section 129, shows that this action is brought for the recovery of monéy arising on contract; in other words it is an action ex contractu for the recovery of a debt. The defendant has been arrested on the ground of fraud in contracting the debt.
The affidavits-on which the ordei* of arrest was granted, show that the debt was contracted and due at the time the application for a discharge was made. The defendant is therefore entitled to be discharged unless the validity of his discharge can be inquired into on this motion, and on such inquiry it should be found to be invalid.
.Section 21 of article 7 of title 1 of chapter 5, part 2, of *235 the Revised' Statutes provides: “If any insolvent discharged under the third, fourth, fifth or sixth articles of this title shall he arrested on mesne process, in a suit upon any debt or liability in which he is exempted from imprisonment, as in those articles declared, and shall apply to any officer to discharge him from arrest, said officer shall cause reasonable notice to be given to the plaintiff in such suit to show cause why such insolvent should not be discharged from such arrest.”
Section 22 of said article provides: “The plaintiff in such suit may show as cause against such discharge any fraud committed by such insolvent in obtaining his discharge, or any cause for avoiding such discharge declared in the said articles, and such officer may require such insolvent to be held to bail on such process, as if no such discharge had been granted.”
Under these sections it was clearly the duty of any officer or court to whom a defendant arrested on mesne process applied to be discharged from arrest, on the ground that he had received a discharge under some one of said four articles, to inquire whether such defendant had been guilty of any .fraud in obtaining his discharge or whether any cause for avoiding such discharge, as declared in such articles, existed. This was the view taken by the late Supreme Court of a similar provision in the act entitled “ An act to abolish imprisonment for debt in certain cases,” passed April 7, 1819, (Laws of 1819, p. 115, § 3.) The provision referred to is “ and provided further that nothing herein contained shall prevent any court of record or any judge of said court from directing such debtor to be held to bail on mesne process, in cases of fraud under this act.”
Under this provision the late Supreme Court, in a case where the defendant, having been arrested without any previous order, applied on motion to be discharged on common bail, refused to discharge him, because the affi *236 davits read in opposition showed facts amounting to prima facie evidence of fraud in obtaining the discharge. (Reynolds v. Manning, 1 Cowen, 228.)
It will .be observed that this case does not fall strictly within the letter of the act of 1819, as no previous direction to hold to bail had been obtained, but the court in accordance with the spirit of the act held that the plaintiff) having shown facts which precluded the defendant from availing himself of his discharge, they would not afford him protection under it. The authority of this case has never been questioned.
The provision of the act of 1819 did not apply to the act entitled “An act for giving relief in cases of insolvency, passed April, 1813.” (R. L. 460.) Consequently the rule adopted in cases arising under that act, that the validity of a discharge would not be inquired into on motion, but that the defendant would be discharged from arrest on the production of his certificate, did not apply to cases under the act of 1819.
This will be seen by comparison of the case of Reed v. Gordon, (1 Cowen, 50,) decided by the Supreme Court, May term, 1823, and the above case of Reynolds v. Manning, decided by the same court, but three months after-wards at August term, 1823. The first case arose under the act of 1813; on the defendant’s motion for a discharge from arrest, the plaintiff’s counsel referred to the above cited provision in the act of 1819, and argued that that provision showed the understanding of the legislature to be that a discharge from arrest, by reason of the defendant having obtained an insolvent discharge, could not be granted on motion, short of legislative provision. The court, however, held that it was settled by repeated decisions that neither fraud or irregularity in obtaining the discharge could be tried on affidavits; that want of jurisdiction was not distinguishable from fraud; that none of *237 the proceedings before the discharge could be questioned in the summary mode of a motion; and discharged the defendant from arrest.
But three months later, their attention having in the above case, been called to the provision in the act of 1819, and that provision having heen disregarded in that case as inapplicable, they, in Reynolds v. Manning, a case arising under the act of 1819, refused to discharge the defendant on motion because the affidavit showed prima facie that there was fraud in procuring the discharge.
This distinction between the two classes of cases depended on the existence in one act of á provision which was not contained in the other, and this distinction has been constantly acted on. Thus we find that all the cases in the late Supreme Court, in which it was held the validity of a discharge would not be inquired into on motion, were cases arising under the act of 1813, as it stood prior to the revision of the statutes.
The adoption of the Revised Statutes in 1828, abolished this distinction, for by them sections 21 and 22 of article 7, which are substantially, so far as this question is concerned, the same as the provision in the act of 1819, were made applicable to discharges under the two third act, and consequently the rule adopted (if any authority is to be followed on the subject) by the late Supreme Court in reference to discharges under the act of 1819 must now be adopted in the case of all discharges, under said third, fourth, fifth and sixth articles.
It is true, since the passage of the Revised Statutes, several cases have been decided holding that the validity of a discharge under the two third act cannot be inquired into on motion to discharge from arrest. Among other cases is that of Russell v. Packard, (9 Wend. 431.) But on examination of these cases it will be seen that sections 21 and 22 of article 7 were overlooked by the court. This *238 brings me to the inquiry as to whether the discharge is invalid. It is claimed to be invalid for two reasons, firstly, because no notice of the proceedings was given to the plaintiffs, and secondly, because the plaintiffs’ debt is not mentioned in the schedule of creditors.
By reference to the statute under which the proceedings were had, it will be seen that no notice is required to be • given to creditors, other than by publishing in a newspaper a notice of the contents of an order theretofore to be made by the officer before whom the proceedings are pending, requiring the creditors of the insolvent to show cause before such officer, at a certain time and place, why the prayer of the petitioner should not be granted. Such an order was made in this case, and a notice of the contents thereof'duly published. The names of the creditors are-not- required to be inserted in the notice; all that is necessary is to direct the notice:
“ To the creditors of. .-.....an insolvent debtor.”
It follows that the plaintiffs had as ample notice as if they had been named in the schedule of creditors, and as full notice as the creditors named in the schedule, and had all the notice requires.
The bare omission of the plaintiffs’ name from the schedule of creditors is not sufficient to invalidate the discharge. To have that effect such omission' must be fraudulent. This was held in relation to proceedings under the two thirds act. (Aynes v. Scribner, 17 Wend. 407. Small v. Graves, 7 Barb. 576.)
Such being the law under that act where it is necessary to confer jurisdiction that two thirds of the creditors should petition, and where, consequently, the omission of-a single debt might be sufficient to constitute the petitioning creditors two thirds of all the creditors named in the schedule, when otherwise they would not be, with much greater reason should it be held to be law under the act *239 in question where it is unnecessary that any creditor should petition.
Under the two thirds act one might as well conceive how a fraud could be perpetrated by the omission of a single debt; such omission might be absolutely necessary in order to make it appear to the officer that two thirds of the creditors were petitioners. Yet the court held that, notwithstanding, this might be the result of such omission, still the bare omission was not, even when connected with such result, necessarily fraudulent. Uo such object, however, could be imputed to an omission of a creditor under the act in question since none of the creditors are required to join in the petition.
It is difficult to perceive how the omission in question could have been fraudulent. For what fraudulent purpose was it omitted? It was. not necessary to omit it to give the officer jurisdiction. It was not necessary to omit it so as to avoid giving notice of the proceedings to the plaintiffs, because all the notice necessary to be given was published in a newspaper directed to the creditors generally, and through this means the plaintiffs would obtain notice as well without being named as creditors in the schedule, as with being so named.
It may be urged that he intentionally omitted the debt so as to avoid recognizing it as his debt. But it was not necessary to omit it for that purpose; he might have inserted it with a memorandum attached stating it to be a debt due by his wife, but claimed by his creditors to be a debt of his own contracting, which claim he denied. In that case there would be no acknowledgment of it as a debt of his own.
But again, being insolvent at the time of his application for a discharge, the addition to his creditors of the plaintiffs small debt of $210 would not have materially affected his financial condition. If then he had reason to *240 suppose himself liable for it, he could have no objection to recognize it. It is an universal rule of law to put such a construction on the acts and conduct of men as will comport rather with innocence than guilt.
I am unable to perceive any fraudulent object to be attained in this case by the omission of the debt in question; its omission must therefore be ascribed to some cause innocent in its character.
Such cause may be the defendant’s belief that under the act of 1860, he was not liable for goods purchased by him in the name of and for his wife as her agent, for the separate business carried on by her. I see nothing indicating that such was not his belief; on the contrary, all the indications tend to show that such was his honest and sincere belief. His belief may be erroneous; but the question of fraudulent intent in omitting the debt depends not on the fact whether it is a valid legal claim or not, but on the defendant’s reasonable belief as to whether it was a debt due by him.
I have come to the conclusion that the discharge is valid.
If then the debt in question is one for which the defendant is liable, he is by his discharge exempted from imprisonment.
If he is not liable for the debt, then, of course, he is not liable to arrest.
Order of arrest vacated.